# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

| | |
|---|---|
| State of California, et al., | |
| Petitioners, | Nos. 25-1595, 25-1642, 25-1846, 25-8019 |
| v. | |
| United States National Highway Traffic Safety Administration, et al., | |
| Respondents. | |

## PETITIONER ZERO EMISSION TRANSPORTATION ASSOCIATION'S OPPOSITION TO MOTION TO HOLD CASES IN ABEYANCE

Petitioner Zero Emission Transportation Association (ZETA) is a coalition focused on advocating for the advancement of the electric vehicle supply chain. ZETA filed a petition for review challenging a new National Highway Traffic Safety Administration (NHTSA) "interpretive rule" entitled *Resetting the Corporate Average Fuel Economy Program*, published at 90 Fed. Reg. 24,518 (June 11, 2025) (the Rule). ZETA advances two distinct challenges to the Rule: the first to NHTSA's new interpretation of its statutory authority to set vehicle fuel economy standards, and the second to NHTSA's decision suspending enforcement

of the existing, unchanged standards for however long it takes the Agency to reconsider and revise those standards (the Suspension Decision).

ZETA respectfully requests that the Court deny the government's motion to hold *both* of ZETA's challenges in abeyance. ZETA does not oppose abeyance of the statutory interpretation question, as set forth in Petitioners' joint, unopposed motion for partial abeyance. But ZETA opposes placing its separate challenge to the Suspension Decision in abeyance. ZETA is suffering concrete harm now based on NHTSA's implementation of the Suspension Decision. Abeyance of the Suspension Decision claim would permit NHTSA to circumvent statutory requirements under the Energy Policy and Conservation Act (EPCA) and the Administrative Procedure Act (APA), and to continue its unlawful suspension indefinitely, exacerbating the concrete financial harm that ZETA's members are presently experiencing.

## BACKGROUND

### A.   Statutory Framework

The Energy Policy and Conservation Act directs the Secretary of Transportation to "prescribe by regulation average fuel economy standards" for new passenger and non-passenger automobiles (known as

"Corporate Average Fuel Economy" or "CAFE" standards). *See* 49 U.S.C. § 32902(a), (b)(1)(A)-(B). EPCA also requires fuel-efficiency standards and compliance and enforcement protocols for commercial medium- and heavy-duty (MDHD) on-highway vehicles and work trucks. *See id.* § 32902.

EPCA allows for credit trading between automobile manufacturers. Where an automaker's fleet has an average fuel economy exceeding the applicable fuel economy standard, the automaker earns compliance credits, which it may then sell to other automakers for use to meet their own compliance obligations. *See id.* § 32903(a), (f).

EPCA provides no authority for NHTSA to suspend or stay regulations pending reconsideration.

## B.   NHTSA's Interpretive Rule

On June 11, 2025, NHTSA issued an "interpretive rule" —without notice and comment—entitled *Resetting the Corporate Average Fuel Economy Program*, 90 Fed. Reg. 24,518 (June 11, 2025) (the Rule). Among other things, the Rule advances a new interpretation of NHTSA's statutory authority under EPCA to set fuel-efficiency standards, and pledges to adopt amended standards through a notice and comment

3

rulemaking. Under that new interpretation, NHTSA disclaims authority to consider electric and plug-in hybrid vehicles when setting fuel economy standards. *See id*. at 24,522-23. According to NHTSA, the Rule "does not, itself, change existing CAFE or MDHD standards or any rights or obligations under the CAFE or MDHD programs." *Id*. at 24,525. "Instead, this interpretation lays the appropriate groundwork for standard-setting rulemakings that will reset the agency's regulatory programs." *Id*. As of September, a proposed rule amending CAFE standards is pending review at the White House Office of Management and Budget, but has not yet been published.[1]

The Rule here separately includes the Suspension Decision: NHTSA's decision not to enforce, anywhere in the country, the existing fuel-efficiency standards which are presently in effect and binding on manufacturers. Without citation to statutory authority for this action, NHTSA announced that "[p]ending the rulemaking process for the establishment of replacement standards, NHTSA will exercise its

---

[1] White House Office of Management & Budget, Office of Info. & Reg. Affairs, *Corporate Average Fuel Economy Standards Amendment*, https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202504&RIN=2127-AM76 (last visited Oct. 27, 2025).

enforcement authority with regard to all existing CAFE and MDHD standards in accordance with the interpretation set forth in th[e] rule." 90 Fed. Reg. at 24,526.

Then, in express reliance on the Rule—and again, without any citation to statutory authority—NHTSA did exactly as promised. It suspended enforcement of the existing, still-binding fuel-efficiency standards, refusing to issue notifications to manufacturers regarding their compliance with those standards. *See id.*; Letter from Peter Simshauser, Chief Counsel for NHTSA, to manufacturers (July 11, 2025) (ZETA Pet. Ex. B) (explaining that NHTSA will not issue compliance notifications for model year 2022 and onward while it reconsiders current fuel efficiency standards).[2] Because NHTSA refused to administer existing regulations and issue compliance notifications, it did not take the next step and transfer credits earned by vehicle manufacturers for exceeding applicable standards to other vehicle manufacturers who have already contracted to purchase those credits to meet their own compliance obligations. *See generally* 49 C.F.R. §§ 536.5(d), 536.8(a), (d)

---

[2] The cited ZETA exhibits and declaration were filed with the Petition for Review, *Zero Emission Transportation Ass'n v. National Highway Traffic Safety Administration*, No. 25-1167 (D.C. Cir. Aug. 7, 2025).

(NHTSA will not honor credit transfers until the corresponding credits are added to the manufacturer's account).

NHTSA's Suspension Decision is causing immediate, concrete harm to ZETA's members. Electric vehicle manufacturers have earned tradeable compliance credits for exceeding applicable fuel economy standards in past model years, and have entered into contracts to sell those credits to other vehicle manufacturers. *See* Nevers Decl. ¶ 7 (ZETA Pet. Ex. C); Ramanathan Decl. ¶ 7 (ZETA Pet. Ex. D). But until NHTSA administers the existing regulations and processes the compliance reports for those model years, electric vehicle manufacturers cannot finalize transactions for credits they sold in years past. *See* Nevers Decl. ¶ 12; Ramanathan Decl. ¶¶ 9-12. These contracts were negotiated by willing parties under governing law and, all told, are valued upwards of $100 million. *See* Nevers Decl. ¶ 14; Ramanathan Decl. ¶ 11.

The harm ZETA's members are suffering from the Suspension Decision is compounded by the fact that—at the time the Rule was published—NHTSA was not up to date on processing compliance notifications. In fact, for light-duty vehicles, NHTSA has not processed end-of-year reports and issued the required compliance notifications for

model year 2022 onward. *See* Nevers Decl. ¶ 11; Ramanathan Decl. ¶ 10. For medium-duty pickups and vans, NHTSA has not yet processed end-of-year reports or issued compliance notifications for model year 2018 onward. *See* Nevers Decl. ¶ 11.

## C.  Procedural History

Petitioners in Case Nos. 25-1595 (State and Local Government Petitioners), 25-1642 (Public Interest Organization Petitioners), and 25-1846 (ZETA) have all challenged NHTSA's newly adopted interpretation of EPCA. All Petitioners and the government agree that the challenges to NHTSA's new statutory interpretation of its standard-setting authority under EPCA may be held in abeyance pending an ongoing NHTSA rulemaking to reconsider fuel economy standards.

As discussed above, ZETA separately challenges NHTSA's Suspension Decision. The government has moved to hold that challenge in abeyance too. The other Petitioners take no position as to whether that challenge should be placed in abeyance, but agree that ZETA's Suspension Decision challenge can proceed independently of Petitioners' common statutory interpretation challenge.

## STANDARD OF REVIEW

A court has discretion to stay a case to promote efficient use of the court's and litigants' resources, after weighing the benefits and hardships of a stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 259 (1936). But if there is even "a fair possibility" that the stay "will work damage to some one else," the movant must "make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255-56 (explaining that "the burden of making out the justice and wisdom" of a stay "lay heavily" on the movant). Thus, the movant must either show that (1) the movant's harms meet the heightened "clear case of hardship or inequity" standard, or (2) the opposing party's claims of hardship are non-existent.

A court is not compelled to stay a live controversy simply because it may become moot in the future. *See Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009). A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted). Mootness arises only if there is nothing for the court to remedy. *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

## ARGUMENT

The government cannot meet its heavy burden and establish that ZETA's challenge to the Suspension Decision should be held in abeyance. While ZETA supports partial abeyance of Petitioners' common statutory interpretation challenge, ZETA's separate Suspension Decision challenge requires immediate resolution because of ongoing, concrete harm to ZETA members. Abeyance of the Suspension Decision challenge would allow NHTSA to evade clear statutory restraints on its ability to suspend or revise regulations. It would permit NHTSA to achieve through procedural maneuvering what the law expressly forbids—suspending binding standards without notice and comment. *See* 5 U.S.C. § 553. It would further impose great hardship on ZETA's members, which are suffering economic loss because of NHTSA's implementation of the Suspension Decision. Thus, the Court must review ZETA's challenge to the Suspension Decision now to remedy NHTSA's illegal effort to subvert EPCA and the Administrative Procedure Act and prevent ongoing and escalating harm to ZETA's members.

*First*, ZETA's Suspension Decision claim raises a distinct legal question that can proceed independently from the challenge to NHTSA's

new interpretation of its standard-setting authority. Petitioners' statutory challenge concerns what evidence NHTSA may permissibly consider in setting fuel economy standards going forward. ZETA's challenge to the Suspension Decision, by contrast, concerns whether NHTSA may lawfully refuse to administer standards that are *already final and in effect. See United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as [a] regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it."). As all Petitioners agree, resolving ZETA's claim about whether NHTSA may evade statutory requirements and suspend regulations without process will have no bearing on Petitioners' claim regarding NHTSA's authority to revise standards *after* the required notice and comment process.

The Suspension Decision is not (as NHTSA suggests) "immune from judicial review" on the grounds that it involves the Agency's "decision not to take [an] enforcement action." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Rather, NHTSA here "'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilit[y]" to implement a validly issued regulation. *Id.*

10

at 833 n.4 (citation omitted). That type of decision is unquestionably "subject to review." *OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998). And even if the government were right about the scope of NHTSA's enforcement discretion—which, again, it is not—that is relevant only to *whether* ZETA wins on the merits. It is irrelevant to the question of *when* ZETA's claim should be considered.

*Second*, NHTSA's refusal to enforce existing standards is already causing ZETA members significant, concrete harm that necessitates this Court's prompt review. As discussed above, applying the Suspension Decision, NHTSA has refused to administer existing regulations and process pending compliance notifications for vehicle manufacturers. *See* July 11, 2025 Letter from Peter Simshauser. Processing these notifications allows manufacturers, including ZETA's members, to finalize already-negotiated transactions, valued at more than $100 million. The inability to finalize transactions imposes immediate and increasing financial harm on manufacturers.

The government makes a passing reference to the fact that Congress recently amended EPCA and reduced the CAFE penalties that apply to light-duty vehicles to zero, *see* Mot. 4, implying that the

11

Suspension Decision is thus of no consequence. That is misleading. For one, Congress zeroed out only those penalties for the standards that apply to light-duty vehicles under 49 U.S.C. § 32911(a). *See* One Big Beautiful Bill Act, Pub. L. No. 119-21, § 40006, 139 Stat. 82, 136 (2025). It did not change the penalties for medium- and heavy-duty vehicles, which are set by regulation, and are also affected by the Suspension Decision. *See* 90 Fed. Reg. at 24,526 (explaining that MDHD standards are affected); 49 C.F.R. § 535.9(b) (providing "NHTSA may assess a civil penalty for any violation of this part under 49 U.S.C. 32902(k)" for MDHD vehicles and establishing penalty amounts). Thus, at best, the government's argument gets it only halfway there.

And, more importantly, NHTSA's refusal to process compliance notifications based on the Suspension Decision matters to ZETA's members *irrespective* of the penalty level. *See* July 11, 2025 Letter from Peter Simshauser. As noted above, ZETA members have already entered into contracts for previously earned compliance credits, which ZETA members can only finalize once NHTSA fulfills its regulatory obligation to process its compliance notifications. Those contracts are economically valuable even where the penalties are now zero.

*Third*, holding these cases fully in abeyance is not necessary to promote judicial economy. Judicial economy demands resolution of ripe claims where, as here, the petitioner suffers concrete and increasing harm. In asserting otherwise, the government rests on the supposition that ZETA's claim "*may* be rendered moot during the course of the proceedings." Mot. 5 (emphasis added). But the government nowhere explains why or how a future standard-setting rulemaking would moot ZETA's claims. And it would not: Even if NHTSA's new rulemaking changes the fuel economy standards, that does not eliminate the Agency's obligation to process already-submitted compliance reports and so does not moot ZETA's challenge to the Suspension Decision. And even if ZETA's claim were at risk of becoming moot, that would be all the more reason for the Court to review ZETA's claim now—and more, to expedite review of this case, so as to ensure that it is resolved in advance of any new rulemaking. Abeyance procedures are not a tool for insulating illegal agency action from judicial review, and this Court should not countenance that result. *See Landis*, 299 U.S. at 255-56 (holding stay is proper only where it advances justice, and not where it subverts it).

To the extent the Court has concerns that the forthcoming rulemaking could impact its review, the appropriate course is to expedite review and disposition. Expedition is particularly appropriate in light of the serious and escalating harms to ZETA's members from NHTSA's unlawful Suspension Decision. *See* Fed. R. App. P. 2(a). Expedited review would ensure ZETA's members receive timely relief.

For the foregoing reasons, ZETA respectfully urges this Court to deny the government's motion to hold the cases fully in abeyance.

Dated: October 27, 2025                    Respectfully submitted,

/s/ Meghan E. Greenfield
Meghan E. Greenfield
Jenner & Block LLP
1099 New York Ave., NW Suite 900
Washington, DC 20001
(202) 639-6000
mgreenfield@jenner.com

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify this document complies with the requirements of Fed. R. App. P. 27(d) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), because it contains 2,345 words, according to the count of Microsoft Word.

/s/ Meghan E. Greenfield
Meghan E. Greenfield
Jenner & Block LLP
1099 New York Ave, NW Suite 900
Washington, DC 20001
(202) 639-6000
mgreenfield@jenner.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I filed and served the foregoing document with the Clerk of the Court by causing a copy to be electronically filed via the appellate CM/ECF system. The participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

/s/ Meghan E. Greenfield
Meghan E. Greenfield
Jenner & Block LLP
1099 New York Ave, NW Suite 900
Washington, DC 20001
(202) 639-6000
mgreenfield@jenner.com